**HALL & EVANS, LLC**
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
TODD B. TUGGLE, ESQ.
Nevada Bar No. 6151
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022
nvefile@hallevans.com
*Attorneys for Defendant Match Group, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAELA MARICH, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>JERRY BROWN, an individual; MATCH GROUP, INC. dba Tinder, a Texas Corporation; BLOCK, INC. dba CashApp, a Delaware Corporation; PAYPAL INC. dba Venmo, a Delaware Corporation DOES I-X; and ROE CORPORATIONS I-X; inclusive, jointly and severally,<br><br>Defendants. | Case No:  2:23-cv-1737<br><br>[District Court Case No.: A-23-877943-C]<br><br>**NOTICE OF REMOVAL**<br><br>Filed Concurrently with:<br>  (1) Notice of Removal<br>  (2) Civil Case Cover Sheet<br>  (3) Notice to Adverse Parties<br>  (4) Corporate Disclosure Statement<br>  (5) Certification and Notice of<br>       Interested Parties<br>  (6) Declaration of Adam R. Knecht<br>  (7) Declaration of Laurie Braddock<br>  (8) Proof of Service |

Pursuant to 28 U.S.C. § 1332(a) Defendant MATCH GROUP, INC. ("Match Group")[1], hereby files this Notice of Removal of the above-referenced action from the Eighth Judicial District Court for the District of Nevada.  In support of removal of this action, Match Group states as follows:

---

[1]  Match Group, Inc. does not own or operate the Tinder online dating service. *See* Declaration of Laurie Braddock ["Braddock Decl."] in Support of this Notice of Removal ¶ 5.)

1

## I.    BACKGROUND

1. On September 18, 2023, Plaintiff Michaela Marich ("Plaintiff"), filed her unverified Complaint (the "Complaint") against Defendants Jerry Brown ("Brown"), Match Group, Block, Inc. d/b/a Cash App ("Cash App"), Paypal, Inc. d/b/a Venmo ("Venmo"), and various fictitious parties in the Eighth Judicial District Court, Clark County, Nevada, Case No. A-23-877943-C, attached hereto as **Exhibit 1**. (See Declaration of Adam R. Knecht in Support of Defendant's Notice of Removal to Federal Court ["Knecht Decl."] ¶ 2.)

2. Plaintiff served the complaint on Match Group on September 26, 2023, by leaving a copy with Match Group's registered agent. Attached hereto as **Exhibit 2** is a true and correct copy of the package of state court action documents served by Plaintiff on Defendant's registered agent together with the service of process transmittal summary and process server delivery details. (Knecht Decl. ¶ 7.)

3. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Clark County District Court or served by any party other than as described above. To Defendant's knowledge, no proceedings related hereto have been heard in the Clark County District Court. (Knecht Decl. ¶ 8.)

4. Plaintiff's Complaint pleads the following causes of action: (1) Fraudulent Misrepresentation, (2) False Promise, (3) Consumer Fraud, Deceptive Trade Practices (4) Negligent Misrepresentation (5) Consumer Fraud, Deceptive Trade Practices, (6) Intentional Misrepresentation, (7) Fraud by Nondisclosure, Concealment, (8) Consumer Fraud, Deceptive Trade Practices, (9) Failure to Warn, and (10) Negligent Security. (Knecht Decl. ¶ 3.)

5. The Plaintiff's Complaint asserted that this matter was exempt from State Court mandated arbitration because the amount in controversy was over the jurisdictional threshold. (Knecht Decl. ¶ 4.) Plaintiff made that claim because the some of the legal theories put forth by Plaintiff allow for treble damages. (Knecht Decl. ¶ 5.) Furthermore, the Plaintiff has made a claim for non-economic and exemplary damages and for attorney's fees and costs. (Knecht Decl. ¶ 6.) Thus, the amount in controversy exceeds the minimum amount in controversy for

HALL & EVANS, LLC
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022

federal jurisdiction.

## II.     BASIS FOR REMOVAL

6. Plaintiff is a citizen of Nevada. (Compl. ¶ 2.)

7. Defendant Brown is a citizen of Ohio. (Compl. ¶ 3.)

8. Defendant Match Group is a Delaware corporation with its principal place of business in the State of Texas. (Braddock Decl. ¶ 3)

9. Defendant Cash App is a Delaware corporation with its principal place of business in the State of California. (Compl. ¶ 5.)

10. Defendant Venmo is a Delaware corporation with its principal place of business in the State of California. (Compl. ¶ 6.)

11. There is now, and was at the time of the commencement of this action, complete diversity of citizenship between the plaintiff and all defendants.

12. This Court has jurisdiction over this matter as there is complete diversity of citizenship, the amount in controversy exceeds $75,000.00, and the Notice of Removal has been timely filed within thirty (30) days of Match Group being served with the Complaint. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the thirty-day removal period runs from the service of the summons and complaint).

13. This Court has original subject matter jurisdiction over this action pursuant to the diversity jurisdiction statute codified at 28 U.S.C. § 1332, which provides, in pertinent part, that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different states." 28 U.S.C. § 1332(a)(1).

14. Pursuant to 28 U.S.C. § 1441(b), the citizenship of the fictitious defendants shall be disregarded in determining jurisdiction. *See* 28 U.S.C. § 1441(b)(1) (regarding removal based on diversity of citizenship jurisdiction, "in determining whether a civil action is removable under section 1332(a) of this title, the citizenship of fictitious defendants shall be disregarded").

A.   **Complete Diversity of Citizenship Exists**

15. For the purpose of diversity of citizenship jurisdiction, an individual is a citizen of the state in which he is domiciled. *See Newman-Green, Inc. v. Alfonzo-Lorrain,* 490 U.S. 826, 828 (1989). For the purposes of diversity jurisdiction, an individual is domiciled in the single state where he resides if the individual has no present intention to reside in another state. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

16. For the purpose of diversity of citizenship jurisdiction, a corporation shall be deemed to be a citizen of any state in which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77, 93 (2010). A corporation's principal place of business is usually the singular location of the corporation's main headquarters "from which the corporation radiates out to its constituent parts." *Hertz Corp.,* 559 U.S. at 93. This "nerve center" test displaced the formerly utilized "business activities test" and does not take into consideration the places in which the corporation has a registered agent or conducts business. *Hertz,* 559 U.S. at 93.

17. Plaintiff is a resident of Nevada.

18. Defendant Brown is a resident of Ohio. Defendant's Match Group, Cash App, and Venmo are each incorporated in Delaware. The State of Nevada is not the principal place of business for any of the corporate Defendants.

19. There is complete diversity of citizenship between the Plaintiff and each of the Defendant parties.

**B.   The Amount in Controversy Exceeds $75,000, Exclusive of Costs and Interest**

20. "In determining whether the defendant has established that diversity jurisdiction exists, the district court must first consider whether it is 'facially apparent' from the complaint that the jurisdictional amount in controversy requirement is met." *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp.2d 1143, 1145 (D.Nev. 2004) (citing *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

4

21. In Plaintiff's Complaint, Plaintiff alleges actual damages in the amount of $29,600, as well as non-economic and exemplary damages. Some of the Plaintiff's claims, if proven, give rise to treble damages. Consequently, the amount in controversy is in excess of $75,000.00.

22. Indeed, Plaintiff's Complaint expressly claims to be exempt from arbitration in state court because the amount in controversy exceeds $50,000. This claimed amount is exclusive of attorneys' fees and costs which may be considered for federal jurisdictional purposes. Thus, from the face of Plaintiff's Complaint, the amount in controversy exceeds the federal jurisdictional threshold.

23. In support of her claim for non-economic and exemplary damages Plaintiff makes the following allegations (which are disputed by Match Group):

    a. she was "the victim of a romance scam perpetrated by Defendant Jerry Brown and facilitated by . . . [Match Group] . . ." (Compl. at ¶ 1.)

    b. that Defendant Brown used Match Group's app to "meet multiple unsuspecting women and engage in romantic relationships with the ultimate purpose of defrauding them of their life savings." (Compl. at ¶ 8.)

    c. that Match Group "developed gamification mechanisms for use in its app and has advertised itself in a way specifically designed to lower inhibitions and encourage risky behavior in order to increase user engagement and subscription revenues." (Compl. at ¶ 11.)

    d. that when she used the Match Group app Plaintiff "was presented with the profile picture of Defendant Brown" and that Match Group "published a blue check mark next to Defendant Brown's name indicating that he had passed a verification test." Plaintiff further alleges that "This verification check mark is marketed by [Match Group] to its users as a way of gaining confidence in the legitimacy of their matches, and in so doing [Match Group] purported to advise with [Plaintiff's] interest in mind." (Compl. ¶ 2.at ¶ 14.)

5

e. that "By representing Brown with a blue checkmark and by the gamified match screen which represented the defendant as a verified and vetted match for [Plaintiff], Defendant [Match Group] engaged in deceptive trade practices under NRS 598.0915(2), NRS 598.0915(5), NRS 598.0915(7), NRS 598.0915(15) and other illegal practices as codified in NRS 528.0915 through 528.0925." (Compl. at ¶ 51.)

f. that "Such actions constitute Consumer Fraud under NRS 41.600." (Compl. at ¶ 52.)

g. that Match Group "had received reports from other victims of Defendant Brown indicating his involvement in similar romance scams." (Compl. at ¶ 56.)

h. that "By publishing the "It's a Match!" screen and portraying Defendant Brown as a vetted and verified user who would be a suitable romantic connection for [Plaintiff], [Match Group] mad a representation that was false." (Compl. at ¶ 57.)

i. that there "was a special relationship between [Match Group] and [Plaintiff] because of [Match Group's] actions as generally set forth above (i.e., Plaintiff's paid gold member status, publication of verification checkmarks, gamification of the published match screen, marketing Tinder in ways to gain confidence and convey a position of knowledge and experience)." (Compl. at ¶ 65.)

j. that these actions "did indeed cause [Plaintiff] to give confidence to [Match Group] because of [Match Group's] position, experience or knowledge; and [Match Group] was aware that [Plaintiff] specifically and its users generally were giving that confidence." (Compl. at ¶ 66.)

k. that "confidence and [Match Group's] conveyance of a position of knowledge and experience created a special relationship between [Plaintiff] and [Match Group] Tinder." (Compl. at ¶ 67.)

l. that the "special relationship established a duty to disclose by [Match Group]" (Compl. at ¶ 68.)

m.     that "[Match Group] assumed the responsibility to give information, such as other user's reports of Defendant Brown's scams, its own lack of vetting connected to user verification and blue checkmarks on the system, and the arbitrary and insecure way its system created a "match" (Compl. at ¶ 69.)

n.     that "[Match Group] was silent regarding a material fact, which it was under a duty to disclose to [Plaintiff]" (Compl. at ¶ 70.)

o.     that "[Match Group] knew it was omitting and/or concealing the fact." (Compl. at ¶ 71.)

p.     that "[Match Group] intended to induce [Plaintiff] to act in a manner different than she would have done had she known the truth." (Compl. at ¶ 72.)

q.     that "[Plaintiff] was unaware of the fact and would not have acted as she did had she known of the omitted fact." (Compl. at ¶ 73.)

r.     that the "concealment, suppression, and/or omission of the fact caused [Plaintiff] to sustain damage" (Compl. at ¶ 74.)

s.     that Defendants "individually and collectively, were either manufacturers or distributors of their respective products (i.e., their apps)" (Compl. at ¶ 80.)

t.     that those "products were defective because, though faultlessly made, they were not accompanied by suitable and adequate warnings concerning their safe use when they all had reason to anticipate that a particular use of the product may be dangerous without such warnings" (Compl. at ¶ 81.)

u.     that any "warning given to [Plaintiff] about the potential for the use of said products to lead to her becoming a victim of Defendant Brown's romance scam was inadequate because it (1) was not designed to reasonably be expected to catch the attention of the consumer, (2) was not comprehensible and did not give a fair indication of the specific risks involved with the product, and (3) was not of an intensity justified by the magnitude of the risk" (Compl. at ¶ 82.)

  v.  that "these defects (i.e., inadequate warnings) in these products existed when [Plaintiff] used them" (Compl. at ¶ 83.)

  w.  that these "products were used in a manner which was reasonably foreseeable by [the Defendants]" (Compl. at ¶ 84), and

  x.  that the "defects were a legal cause of the damage or injury to [Plaintiff]" (Compl. at ¶ 85.)

24. Plaintiff's Complaint seeks damages in excess of the jurisdictional amount required for removal to this Court.

### III. VENUE IS PROPER IN THIS DISTRICT AND DIVISION

25. Plaintiff filed her Complaint in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, which lies in the United States District Court for the District of Nevada. Accordingly, venue is proper pursuant to 28 U.S.C. § 1441(a).

### IV. OTHER REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

26. A Notice of Filing, with a copy of this Notice of Removal attached, will promptly be filed with the Clerk of the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, as required by 28 U.S.C. § 1446(d).

27. A written notice of the filing of this Notice of Removal will be given to Plaintiff as required by law pursuant to 28 U.S.C. § 1446(d).

28. Additionally, as required by 28 U.S.C. § 1446(a), a copy of all processes, pleadings, and orders filed in the underlying state court action are attached hereto as Exhibit 2.

29. Defendants Cash App and Venmo have been consulted regarding this removal and have indicated their consent to the removal of this action to the United States District Court for the District of Nevada as required by law pursuant to 28 U.S.C. § 1446(b)(2). Match Group is informed and believes that Defendants Cash App and Venmo will be joining in this Notice of Removal.

30. The allegations within this Notice of Removal are true and correct, and this cause is within the jurisdiction of the United States District Court for the District of Nevada.

31.     If any question arises as to the propriety of the removal of this action, Defendant Match Group requests the opportunity to present a brief and oral argument in support of its position that this civil action is removable.

32.     By filing this Notice, Defendant does not waive and expressly reserves any defenses that may be available to it, including, without limitation, any defenses relating to being a wrongfully named defendant, service of process and jurisdiction, and any claim that this action is subject to mandatory arbitration, or in the alternative, that this action should be transferred to the United States District Court for the Northern District of Texas. Defendant further does not concede that the allegations in the Complaint state a valid claim under any applicable law.

33.     Defendant reserves the right to submit additional factual support, evidence, and affidavits to support the basis for federal jurisdiction as necessary at the appropriate time.

## **CONCLUSION**

By this Notice of Removal, Match Group does not waive any objections it may have to service, jurisdiction or venue, or any other defenses or objection it may have to this action. Match Group intends no admission of fact, law or liability by this Notice, and expressly reserves all defenses, motions and/or pleas.

DATED this 25th day of October, 2023.

HALL & EVANS, LLC

*/s/ Adam R. Knecht*
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
TODD B. TUGGLE, ESQ.
Nevada Bar No. 6151
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022
nvefile@hallevans.com
*Attorneys for Defendant Match Group, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Hall & Evans, LLC, 1160 Town Center Drive, Suite 330, Las Vegas, NV 89144, and on this date the foregoing NOTICE OF REMOVAL was filed electronically via the court's ECF system which sent notification of such filing to counsel for all parties.

DATED: October 25, 2023

/s/ Teri Jenks

_____
An Employee of HALL & EVANS, LLC